LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KATHERINE BENSHOSHAN,
*on behalf of herself, FLSA Collective Plaintiffs and the Class,*

            Plaintiff,

v.

ACM LEASE HOLDING, LLC,
    d/b/a MYDOC URGENT CARE,
JOHN DOE CORPORATIONS 1-10,
KAMRAN TABADDOR, and
NAHIL SALIB,

            Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

---

      Plaintiff, KATHERINE BENSHOSHAN ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this class and collective action Complaint against Defendants, ACM LEASE HOLDING, LLC, d/b/a MYDOC URGENT CARE, JOHN DOE CORPORATIONS 1-10 ("Corporate Defendants" or "MyDoc Urgent Care"), KAMRAN TABBADOR and NAHIL SALIB ("Individual Defendants")(the Corporate Defendant and Individual Defendant are each individually referred to as "Defendant," and collectively, "Defendants") and states as follows:

1

**INTRODUCTION**

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime; (2) unreimbursed costs for purchasing and maintaining uniforms; (3) liquidated damages; and (3) attorney's fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime; (2) unreimbursed costs for purchasing and maintaining uniforms; (3) statutory penalties; (4) liquidated damages; and (5) attorney's fees and costs.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

**PARTIES**

5. Plaintiff, KATHERINE BENSHOSHAN, is a resident of Queens County, New York.

6. Corporate Defendant, ACM LEASE HOLDING LLC, is a business corporation organized under the laws of the State of New York doing business as "MyDoc Urgent Care" presumably operated by Individual Defendants, KAMRAN TABADDOR and NAHIL SALIB, and employs Collective Action and Class members under a common wage and hour policy. The address for the service of process for ACM LEASE HOLDING LLC is 159 East Gun Hills Road,

Bronx, New York, 10467. Presumably, ACM LEASE HOLDING LLC operates MyDoc Urgent Care facility located in Bronx, New York.

7. JOHN DOE CORPORATIONS 1-8 are various business corporations organized under the laws of the State of New York also doing business as "MyDoc Urgent Care" presumably also operated by Individual Defendants, KAMRAN TABADDOR and NAHIL SALIB, and employs Collective Action and Class members under a common wage and hour policy. Corporate Defendants ACM LEASE HOLDING LLC and JOHN DOE CORPORATIONS 1-8 make common employee-related decisions including payroll, personnel, and wage and hour policies concerning employees. While each individual office comprising JOHN DOE CORPORATIONS 1-8 is ultimately owned by a separate corporation, ACM LEASE HOLDING LLC and JOHN DOE CORPORATIONS 1-8 operate their business and offices as a single integrated enterprise. The identities of the JOHN DOE CORPORATIONS 1-8 will be determined over the course of discovery in this lawsuit, and a subsequent amended complaint will be filed to identify such entities.

8. Upon information and belief, Corporate Defendants are domestic business corporation organized under the laws of New York, that own and operate emergency medical facilities that provides a variety of medical services including in four (4) separate locations:

   a. **Forest Hills, NY:** 116-20 Queens Blvd, Forest Hills, NY 11375

   b. **East Meadow, NY:** 325 Merrick Avenue, Suite 3, East Meadow, NY 11554

   c. **Bronx, NY:** 161 East Gun Hill Road, Bronx, NY 10467

   d. **Brooklyn, NY:** 2860 West 5th St., Brooklyn, NY 11224

   (collectively, the "Facilities") *See* **Exhibit A** for the list of Facilities shown on Defendants' website.

9. Upon information and belief, at all relevant times, Corporate Defendants own and operate the Facilities as a single integrated enterprise under the trade name "MyDoc Urgent Care" in the State of New York:

    a. The Facilities employees are interchangeable among their locations.

    b. Each of the Facilities is advertised and marketed jointly on Defendants' website located at https://www.mydocurgent.com//. *See Id.*

    c. All of Facilities are owned and operated by Defendants under the same brand name and logo. *See Id.*

    d. All Facilities use a central marketing department, HR Department, and administration department. For example, in a job posting seeking a Medical Assistant for the Forest Hill location, lists "161 E Gun Hill Road" which is the street address for the Bronx location. *See* **Exhibit B**.

    e. The Medical Providers exhibited on Defendants' website provide medical services at all locations for MyDoc Urgent Care. *See* **Exhibit C**.

    f. All of the Facilities share a common "Message" webpage on the website, where all Facilities share one (1) common inquiry form, through which messages can be submitted about any of the Facilities. *See* **Exhibit D** for the "Message" section of Defendants' website.

    g. All Facilities share a common Frequently Asked Questions ("FAQ") section of the website. *See* **Exhibit E** for the Frequently Asked Questions section of Defendants' website.

    h. All Facilities provides the same type of medical services including urgent care, emergency medicine, which encompasses treating for allergies, car accident

      injuries, and COVID- 19, as well as std testing and telemedicine. *See* **Exhibit F** for the Services portion of webpage of Defendants' website.

    i. The website-visitors are able to make appointments for all Facilities locations on Defendants' website. *See* **Exhibit G**.

    j. The website-visitors can leave testimonials and reviews for all Facilities on the "Testimonials & Reviews" section in Defendants' website. *See* **Exhibit H**.

    k. All Facilities share common operating hours, which are from 9:00 a.m. to 9:00 p.m. during the weekdays and from 10:00 a.m. to 6:00 p.m. during the weekends. *See* **Exhibit I.**

10. Individual Defendant, KAMRAN TABADDOR, is the Owner of all MyDoc Urgent Care Facilities. KAMRAN TABADDOR exercised control over the terms and conditions of the employment of Plaintiff, FLSA Collective Plaintiffs and Rule 23 Class members. KAMRAN TABADDOR had the power and authority to (i) fire and hire; (ii) determine rate and method of pay; (iii) determine work schedules; and (iv) otherwise affect the quality of employment, of Plaintiff, FLSA Collective Plaintiffs, and Rule 23 Class members. She also had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and the Rule 23 Class members. He routinely visited the MyDoc Urgent Care Facilities that he owned to regularly and directly reprimand any employees who did not perform their duties correctly. Individual Defendant KAMRAN TABADDOR ensured that managers implement Defendants' employment policies and pay practices and direct employees to effectively complete their job duties so that Corporate Defendant is operating efficiently and profitably.

11. Individual Defendant, NABIL SALIB, is one of the medical providers as well as the Co-owner of Forest Hills, Brooklyn, and East Meadow's Locations for MyDoc Urgent Care.

NABIL SALIB exercised control over the terms and conditions of the employment of Plaintiff, FLSA Collective Plaintiffs and Rule 23 Class members. NABIL SALIB had the power and authority to (i) fire and hire; (ii) determine rate and method of pay; (iii) determine work schedules; and (iv) otherwise affect the quality of employment; of Plaintiff, FLSA Collective Plaintiffs and Rule 23 Class members. He also had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and the Rule 23 Class members. He routinely visited the MyDoc Urgent Care Facilities to regularly and directly reprimand any employees who did not perform their duties correctly. Individual Defendant NABIL SALIB ensured that managers implement Defendants' employment policies and pay practices and direct employees to effectively complete their job duties so that Corporate Defendant is operating efficiently and profitably.

12. At all relevant times, Corporate Defendants, were and continues to be "enterprise engaged in commerce" within the meaning of FLSA.

13. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

14. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt all current and former non-exempt employees employed by Defendants, including, but not limited to, receptionists, medical assistants, nurses' aides, technicians, and patient service representatives, employed by Defendants on or after the date that is three (3) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

15. At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have

been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiff and other FLSA Collectives for all hours worked, including overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek. In addition, Defendants failed to reimburse the costs of purchasing and maintaining the required uniforms to Plaintiff and other FLSA Collectives. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

16. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

17. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt and nontipped employees of by Defendants, including, but not limited to, receptionists, medical assistants, nurses' aides, technicians, and patient service representatives, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class Period").

18. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held,

and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

19. The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently based is within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class.

20. Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of: (i) failing to pay overtime premiums for hours worked, including hours worked in excess of forty (40) in a workweek; (ii) failing to provide Class members with wage statements with every payment of wages; (iii) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the NYLL; and (iv) failing to reimburse Plaintiff and Class members for the cost of purchasing and maintaining their uniforms. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

21. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiff in wage and hour cases.

23. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In

addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a. Whether Defendants employed Plaintiff and the Class within the meaning of NYLL;

   b. What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

   c. At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class members for their work;

   d. Whether Defendants properly notified Plaintiff and Class members of hourly rate and overtime rate;

   e. Whether Defendants provided wage statements informing Plaintiff and Class members of their proper overtime rate of compensation and other information required to be provided on wage statements, as required under the NYLL;

   f. Whether Defendants provided Plaintiff and Class members wage statements with each payment of wages, as required under the NYLL;

    g.    Whether Defendants provided wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the NYLL;

    h.    Whether Defendants reimbursed Plaintiff and Class members for the cost of purchasing and maintaining their uniforms; and

    i.    Whether Defendants properly compensated Plaintiff and Class members for all hours worked.

## STATEMENT OF FACTS

26. In or about December 23, 2021, Plaintiff KATHERINE BENSHOSHAN was hired by Defendants to work as a Medical Assistant and Front Desk Receptionist at the "Bronx" MyDoc Urgent Care location at 161 East Gun Hill Road, Bronx, NY 10467. However, she also received training at the "Forest Hills" location and was transferred to work there on an as needed basis.

27. Plaintiff BENSHOSHAN's was laid off by Defendants in or about February of 2020.

28. From beginning of her employment with Defendants to in or around mid-January 2021, Plaintiff BENSHOSHAN was regularly scheduled to work fifty-five (55) hours per week and had a regular work schedule of Mondays to Fridays from 9 a.m. to 8 p.m. From in or around mid-January 2021 to the end of her employment with Defendants, Plaintiff BENSHOSHAN was regularly scheduled to work thirty-two (32) hours per week and had a regular work schedule of Monday to Thursday from 9 a.m. to 5 p.m.

29. Throughout the course of Plaintiff BENSHOSHAN's employment with Defendants, Plaintiff BENSHOSHAN was paid at a base rate of eighteen dollars ($18.00) per hour.

30. Throughout Plaintiff BENSHOSHAN's employment with Defendants, Plaintiff BENSHOSHAN was never compensated at an overtime-rate even when she worked more than forty (40) hours per week.

31. Throughout Plaintiff BENSHOSHAN's employment with Defendants, Plaintiff BENSHOSHAN was required to purchase her own scrubs. Defendants required their employees to wear matching colored scrubs and asked their employees to rotate to different colored scrubs every two weeks. In total, Plaintiff BENSHOSHAN spent four-hundred fifty dollars ($450) for scrubs. Similarly, Class members were also similarly not reimbursed by Defendants for the cost of purchasing and maintaining the uniform.

32. Plaintiff, FLSA Collective Plaintiffs, and Class members were not paid at the overtime premium rate of time and one half of regular hourly rate for each hour exceeding forty (40) hours per workweek.

33. Plaintiff, FLSA Collective Plaintiffs, and Class members incurred damages in addition to not being properly compensated for the overtime work they performed, as a result of not being reimbursed for the cost of purchasing and maintaining their uniforms.

34. Defendants failed to provide Plaintiff and Class members with wage notices when they were hired and annually thereafter. Plaintiff did not receive any wage notice either upon being hired or annually since the date of hiring.

39. Defendants did not provide Plaintiff and Class members with wage statements at all relevant times. Similarly, Class members also did not receive wage statements, in violation of NYLL.

40. Defendants knowingly and willfully operated their business with a policy of not properly compensating either FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) to Plaintiff, FLSA Collective Plaintiffs, and Class members.

41. Due to these unlawful acts of Defendants, Plaintiff suffered liquidated damages in an amount not presently ascertainable. In addition, Plaintiff is entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

42. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF FAIR LABOR STANDARDS ACT

43. Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

44. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

45. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

46. At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

47. At all relevant times, Defendants had a policy and practice of failing to pay wages for all hours worked.

48. At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them wages in the lawful amount for all hours worked, including those in excess of forty (40) hours worked each week.

49. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

50. Defendants knowingly and willfully disregarded the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked when Defendants knew or should have known such was due.

51. At all relevant times, Defendants had a policy and practice of failing to pay the proper overtime premiums to FLSA Collective Plaintiffs for their hours worked.

52. At all relevant times, Defendants willfully failed to reimburse Plaintiff and FLSA Collective Plaintiffs for the cost of purchasing and maintaining their uniforms, which resulted in them incurring additional damages on top of not being properly compensated for the overtime work they performed for Defendants.

53. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

54. As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

55. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages; plus an equal amount as liquidated damages, as well as reimbursement for Plaintiff's and FLSA Collective Plaintiffs' costs for purchasing and maintaining their uniforms. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF NEW YORK LABOR LAW

56. Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

57. At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

58. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff and Class members for all hours worked, including at the statutory rate of time and one-half the regular rate for overtime hours worked.

59. Defendants failed to provide a wage and hour notice, on the date of hiring and annually, to Plaintiff and Class members, in direct violation of NYLL.

60. Defendants failed to provide wage statements with every payment issued to Plaintiff and Class members, as required by NYLL § 195(3).

61.     Defendants knowingly and willfully operated their business with a policy of not providing wage statements as required under the New York Labor Law.  Defendants are required to provide itemized listings of deductions taken on each wage statement. Moreover, with respect to all employees, Defendants failed to provide wage statements that satisfied statutory requirements under the NYLL.

62.     Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees wage notice, at date of hiring and annually thereafter, as required under NYLL.

63.     Defendants also willfully violated Plaintiff's and the Class members' rights by failing to reimburse them for the cost of purchasing and maintaining their uniforms.

64.     Due to Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants unpaid overtime premiums; reimbursement for the cost of purchasing and maintaining their uniforms; reasonable attorney's fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Plaintiffs, and Class members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid overtime compensation under FLSA and NYLL;

d. An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under NYLL;

e. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to NYLL;

f. An award of unpaid wages due to Defendants' failure to reimburse for the cost for purchasing and maintaining their uniforms under FLSA and NYLL;

g. An award of prejudgment and post-judgment interest, costs and expenses of this action, together with reasonable attorney's and expert fees and statutory penalties;

h. Designation of Plaintiff KATHERINE BENSHOSHAN as Representative of FLSA Collective Plaintiffs;

i. Designation of this action as a class action pursuant to F.R.C.P. 23;

j. Designation of Plaintiff KATHERINE BENSHOSHAN as Representative of the Class; and

k. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: April 26, 2022

                Respectfully submitted,

By: */s/ C.K. Lee*
     C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs and the Class*